IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CIVIL DIVISION
"IN ADMIRALTY"

CENTURY MARITIME LLC                    CASE NO:

    Plaintiff,

vs.

CLIPER TRADING INC. and CLIFTON PERSAD

    Defendants.

_____/

## VERIFIED COMPLAINT IN ADMIRALTY

1.     This is a case within this Court's Admiralty and Maritime Jurisdiction and Supplemental Jurisdiction as hereinafter more fully appears and is an Admiralty or Maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.     This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C.§1333, 28 U.S.C. § 1330, Supplemental Rule B for Certain Admiralty and Maritime Claims, Local Rule 7., Fed. R. Civ. P. 9(h), and the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

3.     Jurisdiction also lies in this Court pursuant to 28 U.S.C. § 1367, in that the claims against the Defendants are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.     Jurisdiction and Venue are proper in this Court because the property owned by Defendants is presently located within this District.

5.     At all times material, CENTURY MARITIME LLC. ("Plaintiff") was and is a FLORIDA Limited Liability Company with its principal place of business at 1625 Patricia Street Key West

1

Florida and is the Owner and Operator of the M/V CENTURY, a Vanuatu flagged cargo ship trading in the Caribbean Sea.

6.    At all times material, CLIPER TRADING INC. was a Wyoming corporation with a registered office located at 1712 Pioneer Ave Suite 500 Cheyenne Wyoming 82001, with no known presence in this District.

7.    Defendant Cliper trading Inc. cannot not found within this District within the meaning of Supplemental Rule B, and has no offices, business or agents in this district and is not registered to do business in Florida pursuant to Sunbiz.org and the Florida Secretary of State. A search of the yellow pages and business internet search shows no presence in Florida.

8.    Defendant Clifton Persad cannot not found within this District within the meaning of Supplemental Rule B, and is believed to be domiciled in Trinidad and Tobago, but owns, controls, directs bank accounts in Jacksonville Florida for himself and his alter-ego Cliper Trading Inc. and is not found within this District within the meaning of Supplemental Rule B.

9.    Defendant Cliford Persad is the Managing director and owner of Defendant Cliper Trading Inc. and Cliper Trading Inc.is the alter-ego of Clifton Persad.

10.    This is an action to obtain jurisdiction over the Defendants and their property and to obtain security for any judgment or award eventually entered against Defendants.

11.    On or about January, Plaintiff entered into a written maritime contract/commercial invoice (attached as Exhibit A) with defendant Cliper Trading Inc. whereas Cliper trading would sell approximately 210,000 gallons of Fuel to the Plaintiff and load

2

it onto the Motor Vessel (M/V) CENTURY at or near Trinidad on or about January 7, 2019.

12.    Plaintiff wire transferred $273,000 from its Bank to the bank account directed by the contract to a Bank of America Account for purchase of 200,000 gallons of available fuel.

13.    Defendants directed a fuel barge to come alongside the MV CENTURY to provide the illusion of loading the fuel.

14.    Plaintiff then wired $273,000 dollars to defendants as was the procedure in the contract.

15.    Upon receipt of the funds, upon information and belief, defendants, working in concert with others, called Customs agents in Trinidad and alleged that the MV CENTURY was carrying contraband and drugs, causing a detention action against the vessel and her crew and directing the barge depart the M/V CENTURY without loading the fuel. The barge left with the fuel.

16.    Defendants, knowing there was no fuel transferred, converted the funds, kept the funds and may have attempted to transfer funds to another account at Bank of America or wire it to its co-conspirators.

17.    Demand was made for the delivery of the fuel to the vessel or return of funds, either which have not occurred.

18.    Plaintiff attempted to recall the wire due to the fraud and Bank of America was unable to do so due to the vessel detention arranged by defendants and their agents, but upon information and belief , the Bank of America has frozen the accounts of Cliper Trading Inc. and/or Clifton Persad due to allegations of fraud.

19.    Defendants promised to return the funds but have not.

20.    Plaintiff has performed all conditions precedent prior to bringing this action.

## COUNT I – BREACH OF MARITIME CONTRACT

Plaintiff incorporates and realleges paragraphs 1 through 20 as if fully set forth herein and further alleges:

21.    This is an action for breach of a maritime contract for the purchase of fuel for the M/V CENTURY from Defendants.

22.    Plaintiff brings this claim *in personam* against Defendant, Cliper Trading Inc. as more fully set out herein.

23.    On or about January 6, 2019, Plaintiff entered into a written maritime contract/commercial invoice (attached as Exhibit A) with defendant Cliper Trading Inc. whereas Cliper trading would sell approximately 210,000 gallons of Fuel to the Plaintiff and load it onto the M/V CENTURY at or near Trinidad on or about January 7, 2019.

24.    Plaintiff wire transferred $273,000 from its Bank to the bank account directed by the contract to a Bank of America Account for purchase of approximately 200,000 gallons of available fuel.

25.    Defendants directed a fuel barge to come alongside the MV CENTURY to load the fuel onto the Plaintiff's vessel the M/V CENTURY.

26.    Plaintiff then wired $273,000 dollars to defendants as payment for the fuel.

27.    Plaintiff performed its obligations under the contract, but did not receive the 200,000 gallons of diesel fuel nor did they receive a refund of the purchase price.

28.    Plaintiff declared a breach of the contract and demanded performance of the contract or a refund.

29.    Defendant Cliper Trading Inc. did not return the funds and did not provide the fuel.

4

30.     Accordingly, Defendant Cliper Trading breached the contract and as a result Plaintiff is damaged including loss of the $273,000 in purchase funds, ship demurage and delays caused by non-delivery of $5,000 per day for 14 days, ($70,000) and loss of income for the voyage of $94,000 for total damages of $437,000 as best can be calculated.

WHEREFORE having shown breach of contract and damages, Plaintiff prays for entry of judgment in the amount of $437,000 against Defendant Cliper Trading Inc. plus prejudgment interest and costs and fees for this admiralty action and garnishment of the Bank of America Funds held by the bank and believed to be property of Defendant Cliper Trading Inc.

### COUNT II FRAUD AGAINST DEFENDANT CLIFTON PERSAD

Plaintiff incorporates and realleges paragraphs 1 through 30 as if fully set forth herein and further alleges:

31.     This is an action for fraud against defendant Clifton Persad *in personam* for theft of funds from Century Maritime LLC arising out of procurement of a maritime necessary of fuel for the M/V CENTURY.

32.     On or about January 5, 2019 Clifton Persad entered into negotiations with Century Maritime's principle to broker and supply fuel for the M/V CENTURY.

33.     On January 5, and 6, 2019, Clifton Persad made material misrepresentations to Captain Mike Chavis of Century Maritime that he and his company owned the fuel he was selling, that he would deliver fuel on January 6, 2019 and that the purchase funds would be utilized for purchase and delivery of the fuel to the vessel.

34.    These representations were false and Defendant Persad knew they were false at the time he made them and were made to induce Plaintiff to wire $273,000 to defendants' designated bank account.

35.    Defendant Persad did not own or control the fuel and was acting as a front for a fuel scam.

36.    Upon information and belief, defendant Persad engaged in subterfuge and distraction by making a false report to Trinidad Customs or having agents send Customs to board the vessel after the wire transfer was sent, to direct the fuel barge away from the M/V CENTURY.

37.    Defendant Persad failed to disclose that he was collecting money for a third party, that he would never deliver the fuel and that he was transferring the funds to a third party.

38.    Defendants held themselves out to be reputable business entities and persons with a U.S. office and a U.S. bank account to convince Plaintiff to consummate the fuel purchase and funds wire.

39.    Plaintiff reasonably relied on these representations in doing business with Defendant Persad as defendant Cliper Trading has a valid US office, a website and a U.S. bank account and their a vessel agent recommended Cliper Trading and Clifton Persad as valid and reputable business people.

40.    As a result of the fraudulent misrepresentations by Mr Persad, Plaintiff wire transferred $273,000 from its Bank to the bank account directed by the contract to a Bank of America for purchase of approximately 200,000 gallons of fuel.

41.    Defendants directed a fuel barge to come alongside the MV CENTURY to load the fuel onto the Plaintiff's vessel the M/V CENTURY.

42.    Plaintiff did not receive the 200,000 gallons of diesel fuel nor did they receive a refund of the purchase price.

6

43.     Defendant Clifton did not return the calls emails or text messages from Plaintiff for over 5 days after the wire transfer was sent and made false assertions that he did not know the fuel was not delivered.

44.     Upon information and belief, at all times material, defendant Clifton Persad used Cliper Trading Inc. as a front and as his alter-ego to mislead customers and clients, utilized the Company for his own benefit, comingled funds and set up the company to avoid liability.

45.     Upon information and belief the ship's agent in Trinidad conspired with Defendants and sought a commission from Defendants through text messages for the successful theft of funds.

46.     Cliper Trading Inc. is registered in Wyoming and does not have a real office, just a mailbox, and that address is a virtual office, and Cliper Trading Inc. has no employees on site and the address of the corporation has been used by other companies involved in schemes to defraud.[i]

47.     Defendant Persad refused to provide information as to whom the funds were transferred to, where the funds are or what account number he transferred them to.

48.     Defendant Persad made comments to Century Maritime that his accounts were frozen and he could not use his bank card to travel.

49.     Upon information and belief, Defendants or their agents are still in possession and control of the $273,000 in misappropriated funds.

50.     As a result of this fraud, Plaintiff is damaged including loss of the $273,000 in purchase funds, delays caused by non delivery of $5,000 per day for 14 days, ($70,000) and loss of income for the voyage of $94,000 plus attorneys fees and the cost of this litigation, estimated to be $4,000 in costs and $10,000 in attorneys fees for total damages of $451,000 as best can be calculated.

WHEREFORE having shown fraud and damages, Plaintiff prays for entry of judgment in the amount of $451,000 against Defendant Clifton Persad plus prejudgment interest, attorneys fees, costs and fees for this common law and admiralty action and for a Rule B garnishment of the Bank of America funds held by the bank and believed to be property of Defendant Clifton Persad and to hold of these funds as security for this count and all available relief that is proper and just.

## COUNT III – MARITIME ATTACHMENT AND GARNISHMENT
## PROPERTY OF DEFENDANTS (CHATTELS)

Plaintiff incorporates and realleges paragraphs 1 through 50 as if fully set forth herein and further alleges.

51.     Plaintiff seeks a Rule B attachment of the ill-gotten funds believed to be in the possession of Defendant Cliper Trading Inc. and Defendant Clifton Persaud at the Bank of America and the branch located in Jacksonville Florida.

52.     Despite a diligent search, Defendants cannot be located within this District, but Defendants' assets are or soon will be located within this District and within the jurisdiction of this Court.

53.     The Defendant's assets within this District consist of Bank Accounts and funds located in Jacksonville Florida or other Florida Branches within this district and held by Bank of America on or behalf of defendant Cliper Trading Inc. and/or Clifton Persad and may include frozen funds that were wired from defendants' account(s).

54.     The Defendant's assets within this District consist of Bank Accounts and funds located in Jacksonville Florida and held by Bank of America on or behalf of defendant Cliper Trading Inc. and Clifton Persad.

55.    The Property may be attached pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure and held or deposited into the Court as security to satisfy the claims herein.

WHEREFORE, Plaintiff respectfully demands judgment, and pursuant to Local Admiralty Rule (E)(l) prays as follows:

A.    That process according to the practice of this Court issue against the Defendants;

B.    That if the Defendants cannot be found within the District, as stated in this Verified Complaint, that all of their Property within the District be attached as set forth in this Complaint, with interests and costs, in an amount including:

   a.   $437,000 in damages for breach of maritime contract;

   b.   $14,000 in attorneys fees and costs for common law fraud and bad faith;

   c.   costs and expenses *in custodia legis* be awarded in the amount of $5,000.00, plus such additional costs and expenses as may occur during the pendency of this action;

   d.   That Defendants property as attached herein be condemned and deposited into the registry of Court or held to satisfy any judgments; and

   e.   That Plaintiff have pre and post judgment interest awarded in this maritime action.

WHEREFORE, having met the conditions for a Rule B attachment of Defendants' funds, Plaintiff prays for issuance of Rule B Garnishment process directing the U.S. Marshal to Garnish and Attach the property of Defendants believed to be located at the Bank of America, 9550 REGENCY SQUARE BLVD Jacksonville Florida 32225, including account number ending in 9953, in the amount of the claims of $451,000 plus $5000 for custodial costs, and that the property be held by

the Bank of America pending further order of the Court, or that it be deposited into the Registry

of the Court as security for the claims of Plaintiff and for all other relief that is proper and just.

Respectfully submitted this 1ˢᵗ day of February, 2019.

> s/Matthew J. Valcourt
> Matthew J. Valcourt
> Fla. Bar No. 0088791
> MG+M LAW
> 600 Brickell Ave Suite 1400
> Miami FL 33016
> Telephone: (305) 763-2891
> Facsimile: (305) 537-3411
> Email:mvalcourt@mgmlaw.com;
> mvalcourt@vlacourtlaw.com
> Attorneys for Plaintiff, CENTURY MARITIME LLC

## VERIFICATION

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

BEFORE ME, the undersigned authority, personally appeared Ken Uracius who was duly sworn and says that he has read the foregoing Verified Complaint filed in this case and is familiar with its contents, which are true to the best of his knowledge, information, and belief. The sources of his information and grounds for his belief are documents attached as exhibits, and company files and records of CENTURY MARITIME LLC, and his personal knowledge.

Kenneth Uracius

as Manager CENTURY MARITIME LLC

SWORN TO AND SUBSCRIBED before me this ___1st___ day of February, 2019

Signature of Notary Public, State of Florida

MATTHEW JOHN VALCOURT
Notary Public - State of Florida
Commission # GG 226202
My Comm. Expires Jul 24, 2022
Bonded through National Notary Assn.

Print, Typed or Stamped Commissioned Name of Notary Public

Personally Known___✓___

Produced Identification_____ Type of Identification Produced:

---

[i] Special Report-A Little House of Secrets on the Great Plains, SHELL GAMES A Reuters Investigation: https://www.reuters.com/article/oukwd-uk-usa-shell-companies-idAFTRE75R22L20110628